## JOHN RIDGWAY AND OTHERS *v.* MALINDA HALL.

**Wills—Testator Laboring Under Great Hatred, Prejudice and Delusion— Discovery of Mistake—Failure to Revoke.**

The testator acted unnaturally in disinheriting the orphan children of his deceased son, who were wholly guiltless of any offense toward him, either real or fancied. When he executed the will he was laboring under a very great prejudice toward their mother, growing out of her separation from her husband, and the suspicion upon the part of himself and family that she was instrumental in bringing about his death. Afterwards he became convinced that his suspicion against his daughter-in-law was without foundation and that he had made a will that would have the effect of disinheriting her children without sufficient cause, but he died without revoking it. Held, that at the time the testator executed the will he was laboring under such a degree of hatred and prejudice toward his daughter-in-law and under such a fixed delusion as to her agency in bringing about the death of his son, as to render him insane as to her and her children, and consequently at that time his mind was not in a proper state for disposing of his estate with reason, and that after he realized the delusion under which he acted when the will was written, he had become so completely under the domination of the appellee that he did not have the moral courage to destroy it.

APPEAL FROM HENRY CIRCUIT COURT.

September 12, 1871.

OPINION BY JUDGE LINDSAY:

This appeal presents two questions.

Was the testator, Samuel Ridgway, of a sound and disposing mind when he executed the paper offered by the propounders as his last will and testament?

If he was not, did his failure to revoke or destroy the same amount to a ratification of its provisions and a re-execution of the supposed will?

From the evidence we are constrained to conclude that the testator acted unnaturally in disinheriting the orphan children of his deceased son Richard, who were not only infants at the time, but wholly guiltless of any offense towards him, either real or fancied. Further, that when he executed the paper, he was laboring under a very great prejudice towards their mother, growing out of her separation from and suit against her deceased husband for divorce and alimony, and the suspicion upon the

part of himself and family that she had been actively instrumental in procuring or bringing about his death.

It seems she instituted a divorce suit on the 13th of November, 1851, and that on the same day her husband gave to the testator a mortgage upon all his estate to secure the payment of an alleged debt of near $800.00. This debt and mortgage Mrs. Ridgway charged to be fraudulent, and intended to prevent her from securing alimony, and this charge had the effect of still further exasperating the testator. In point of fact it seems that Richard Ridgway committed suicide, but for some reason not developed by the record his father was of the opinion that he had been murdered, and that his daughter-in-law was the instigator, if not a participant in the murder. Whilst these convictions had full control of the testator's mind, he (in July, 1852) executed the paper now before us.

His conduct at the time, and the paper upon its face clearly indicate the most intense aversion towards and hatred of the wife of his deceased son, and the will is conclusive of the fact that he was so completely mastered by his feelings, as to permit them to influence and control him in his conduct towards the unoffending children of the woman he hated.

His subsequent statements authorizes the inference that this unnatural and unfounded bitterness and prejudice was intensified by the influence of his wife and daughter who were the sole beneficiaries under the will. To his wife he gave all his estate during life with remainder to his daughter, the appellee, and stated that he gave nothing to the children of his deceased son, for reasons that he did not desire to disclose.

In 1859 his wife died, and shortly after her death it seems he became convinced that his suspicions against his daughter-in-law were without foundation, and that he had made a will which would have the effect of disinheriting her children without sufficient cause.

He frequently spoke of its having been written when he was aggrieved by his daughter-in-law, expressed dissatisfaction with its provisions and often characterized it as "Linda's" (Mrs. Hall's) will.

His failure to destroy it may be accounted for by the fact that it was not in his possession, and that for some time before his

death, the draftsman, in whose hands it was left, was absent from Kentucky. Further, his habits of dissipation disqualified him in the latter years of his life from taking any decided action in matters of this kind.

In addition to all this it cannot be doubted but that after the death of his wife he was, to a very great degree, under the control and domination of the appellee, Mrs. Hall.

The evidence before us is not entirely consistent, and some of it relied upon by appellants is scarcely entitled to credit, but all the facts in the case being considered, we are of opinion that Samuel Ridgway, at the time he executed the paper before us, was laboring under such a degree of hatred and prejudice towards his daughter-in-law, and under such a fixed delusion as to her agency in bringing about the death of his son, as to render him insane as to her and her children and, consequently, that at that time his mind was not in a proper state for disposing of his estate with reason, or according to a fixed judgment uninfluenced by designing relations or interested friends.

We are also of opinion that after he discovered his mistake, and he realized the delusion under which he acted when the will was written, he had become so completely subversive of the influence and domination of the appellee that he did not have the moral courage to destroy or revoke the will, nor to do anything in the premises, prejudicial to her interest, or contrary to her wishes.

For these reasons the judgment of the court below is reversed and the cause remanded with instructions to that court to issue its mandate to the county court of Henry county directing and requiring that court to set aside and hold for naught its order admitting to probate the paper offered by the propounders as the last will and testament of Samuel Ridgway, deceased, and for such orders or proceedings as may be proper in the premises.

Chief Justice Pryor not sitting.

*Rodman, Marshall, Montfort, for appellants.*

*Lindsay, Scott, DeHaven, for appellee.*